UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
04-CV-1735(JMR/FLN)


Richard J. Wollenberg, II      )
                               )
          v.                   )
                               )          ORDER
John E. Potter, Postmaster     )
General; United States         )
Postal Service                 )


     Plaintiff brings this action under Title VII against his former employer alleging discriminatory discharge. Defendants move for summary judgment. For the reasons set forth below, defendants' motion is granted.

I.  Background

     Richard Wollenberg ("Wollenberg") was employed as a mail handler for the United States Postal Service ("USPS"). His work history has been troubled. He was in an altercation with another employee, which resulted in a suspension from July 12, 2001, until January 22, 2002. That occasion arose when he hit a coworker with a cribbage board.

     After that incident, the USPS granted Mr. Wollenberg a return to work, subject to a "last chance" award which stated:

> Other employees should not have to be concerned that [Wollenberg] will engage in similar misconduct in the future. To make the point further evident to [Wollenberg, his] reinstatement shall be on a last chance basis. For a period of one year from the date of his reinstatement, [Wollenberg] shall engage in no similar misconduct. Should he engage in similar misconduct, [Wollenberg] shall be immediately removed.

(Ex. 1, Admission 224).

On January 28, 2002, only six days after Wollenberg received this last chance warning, Michelle Richardson ("Richardson"), another coworker of Wollenberg, complained to her supervisors that Wollenberg hit her.  Over the next two days, in response to her complaint, USPS supervisors conducted a preliminary investigation including interviewing Richardson, Wollenberg, and Ken Preiner ("Preiner"), an eyewitness.  Richardson claimed that while she was waiting for a forklift to pass over an employee walkway, Wollenberg approached her from behind and hit her with his backpack.  Preiner said he observed Wollenberg make a swinging motion and dip his shoulder in an intentional manner, so as to strike Richardson with the backpack.  Wollenberg declined to comment.

On January 29, 2002, one week after his return to work, Wollenberg was placed in an emergency off-duty status pursuant to article 16, section 7, of the USPS's Union agreement.  Later that day, Wollenberg gave his Union Representative a written statement saying Richardson was blocking the walkway, with almost enough room to squeeze by.  He claimed he merely "brushed against" her with his backpack.  The USPS gave Wollenberg a second opportunity to explain the incident prior to imposing formal discipline.  On February 11, 2002, Wollenberg named seven witnesses he claimed had heard Richardson say she was going to get him.  When subsequently interviewed, none of the seven witnesses corroborated Wollenberg's claim.

2

On February 20, 2002, the USPS issued Wollenberg a notice of removal for unacceptable conduct occurring while his employment was subject to a "last change" award.  His termination became effective March 30, 2002, subject to subsequent grievance procedures provided by the collective bargaining agreement.

On March 30, 2002, Wollenberg timely filed a formal Equal Employment Opportunity ("EEO") administrative complaint.  He alleged the USPS took adverse actions against him in allowing Richardson to "harass, slander, and to create a hostile environment . . . for years . . . culminat[ing] with her latest stunt on January 28," an incident he claimed Richardson "concocted."  The complaint further stated the discriminatory behavior had gone on for years, and Wollenberg believed the basis for the alleged discrimination was religion, sex, and retaliation.  The claim proceeded to step 2 of the grievance procedure, at which point it was denied.

On May 30, 2002, the Equal Employment Opportunity Commission ("EEOC") accepted Wollenberg's religious and gender discrimination complaint for investigation.  The EEOC investigated two previous incidents:  the first being Wollenberg's suspension without pay from July 12, 2001, until January 22, 2002; and the second being Wollenberg's notice of removal on February 20, 2002.  The EEOC investigation concluded August 16, 2002.  On October 15, 2002, a labor arbitrator found the USPS had just cause to support each

3

challenged employment action.

An EEO judge dismissed the administrative proceedings on December 18, 2002, because Wollenberg failed to appear for mediation and failed to comply with her orders. Wollenberg administratively appealed this dismissal on May 16, 2003. On January 9, 2004, as a sanction for Wollenberg's failure to follow the EEO judge's orders, the EEOC ordered the EEO judge to remand the case to the agency to issue a decision on the merits of the case.

The USPS issued a final agency decision on January, 28, 2004, finding Wollenberg had failed to make a *prima facie* case of discrimination because he failed to produce evidence of anyone similarly situated who was treated more favorably, and he had not shown a pervasively hostile environment or that his claim was related to a protected category.

Wollenberg filed this federal action on December 1, 2005. He claims his termination was based on his gender and religious beliefs, and that the USPS management encouraged and allowed an ongoing hostile work environment.

Defendants have moved for summary judgment. Wollenberg has "replied" by making a xerographic copy of defendants' motion, "annotated" by marginalia containing conclusory statements such as, "she made it up!" and "Preiner was nowhere around." He also submitted a copy of documents from the administrative record with

4

similar scribbled comments.

At oral argument, the Court advised plaintiff that his summary judgment submissions did not comply with Federal Rule of Civil Procedure 56(e).  The Court, sua sponte, gave Wollenberg 10 days to submit materials in compliance with Rule 56.  Wollenberg's later submission was another stack of documents with similar, conclusory hand-written comments.

II.  <u>Discussion</u>

A.  <u>Summary Judgment</u>

Summary judgment is appropriate when the evidence viewed in the light most favorable to the nonmoving party presents no genuine issue of material fact.  Fed. R. Civ. P. 56; <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 246 (1986).  The party opposing summary judgment may not rest upon the allegations set forth in its pleadings, but must produce significant probative evidence demonstrating a genuine issue for trial.  <u>See</u> <u>Anderson</u>, 477 U.S. at 248-49; <u>see also</u> <u>Hartnagel v. Norman</u>, 953 F.2d 394, 395-96 (8th Cir. 1992).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  <u>Anderson</u>, 477 U.S. at 247-48.  If the opposing party fails to carry that burden, or fails to establish the existence of an essential element of its case on

which that party will bear the burden of proof at trial, summary judgment should be granted. See Celotex, 477 U.S. at 322.

Even affording Mr. Wollenberg's submissions the most charitable reading, the Court finds he has failed to "designate specific facts creating a triable controversy," as required by Rule 56(e) of the Federal Rules of Civil Procedure. See Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004). Simply filing voluminous documents from the administrative record and inviting the Court to read them in their entirety does not satisfy Wollenberg's burden to rebut defendants' motion for summary judgment. A court is not "obligated to wade through and search the entire record for some specific facts which might support the nonmoving party's claim." Jaurequi v. Carter Mfg. Co., 173 F.3d 1076, 1085 (8th Cir. 1999) (citation omitted). Because Wollenberg has entirely failed to set forth specific facts creating an issue for trial, summary judgment is appropriate.

B. McDonnell Douglas Analysis

Setting aside Wollenberg's procedural lapses, the Court has looked at his substantive claims. He claims he is entitled to recover under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq., for what he claims to be the USPS's decision to terminate him based on religious and gender discrimination. Such a claim is considered in light of the familiar McDonnell-Douglas burden shifting analysis. McDonnell Douglas Corp. v. Green, 411

U.S. 792 (1973).  This requires that plaintiff must first establish a prima facie case of discrimination.  Id. at 802.  If he can do so, the case moves to stage two, where defendant is afforded an opportunity to show it had a legitimate, non-discriminatory reason for its actions.  Id.  If the defendant provides such a reason, the claim moves to stage three, and the burden shifts back to plaintiff to establish that the proffered reason is a pretext for discrimination.  Id. at 804.

Mr. Wollenberg claims he was a victim of disparate treatment based on religion and gender.  He also alleges he was subject to a hostile work environment based on coworker Richardson's harassment.  His claims fail because he has entirely neglected to set forth specific facts to establish a prima facie case of either type of discrimination.  In the absence of such a prima facie case, the McDonnell Douglas burden-shift is never engaged:  his claims fail at stage one; no burden is imposed on the defendants at all.

1.   Disparate Treatment

On a claim of disparate treatment, a plaintiff must establish a prima facie case showing:  (1) he is a member of a protected class; (2) he was meeting the legitimate expectations of his employer; (3) he suffered an adverse employment action; and (4) circumstances exist which give rise to an inference of discrimination.  Wheeler v. Aventis Pharm., 360 F.3d 853, 857 (8th Cir. 2004).  Here, plaintiff's case fails.  Wollenberg has not

7

shown he was meeting the expectations of the USPS, and he has failed to produce any evidence to raise an inference of discrimination.

After his return from a lengthy suspension, the USPS placed him under a "last chance" award:  if he engaged in similar misconduct, he would be terminated.  He did engage in such conduct. The incident was investigated.  The USPS found Wollenberg had intentionally hit Richardson without provocation.  A labor arbitrator found the USPS had just cause to terminate Wollenberg's employment for violating the collective bargaining agreement's term forbidding unprovoked and unwanted physical contact.  The Court defers to the arbitrator's decision on this point, as the arbitrator is charged with interpreting and applying the collective bargaining agreement.  Brotherhood of Maintenance of Way Employees v. Soo Line R.R. Co., 266 F.3d 907, 910 (8th Cir. 2001).  Based on the arbitrator's findings, the Court finds Mr. Wollenberg was not meeting the USPS's expectations.

Mr. Wollenberg has also failed to put forth specific facts to support his claim that the USPS terminated him or treated him differently because of his gender or religion.  An inference of discrimination may exist where an employee shows he was treated less favorably than other similarly situated employees who are not in his protected class.  Clark v. Runyon, 218 F.3d 915, 918 (8th Cir. 2000). Wollenberg has not identified such a similarly situated

8

employee, nor has he provided any other evidence to indicate discrimination based on his religion or gender.  His disparate treatment claim fails.

    2.  <u>Hostile Work Environment</u>

On claiming to be a victim of a hostile work environment, a plaintiff must establish a prima facie case showing:  (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was because he is a member of the protected group; (4) the harassment affected a term, condition, or privilege of employment; and (5) his employer knew or should have known of the harassment and failed to take proper remedial action. <u>Pedroza v. Cintas Corp. No. 2</u>, 397 F.3d 1063, 1068 (8th Cir. 2005). Here again Wollenberg's claim fails because he has not provided any evidence showing that Ms. Richardson harassed him based on either his gender or his religion.  He has not produced any evidence showing she treated men or Christians worse than women or people of other religions.

Wollenberg's claim – such as it is – establishes at most  that Ms. Richardson had some sort of personal grudge against him. Richardson did admit:  "one might say I don't like this sort of person."  However, even if Richardson did concoct the January 28, 2002 incident – an incident witnessed by another – the most Wollenberg can establish is that Richardson "was out to get him" because she had a personal dislike for him.  Absent any evidence of

a single discriminatory statement or act, comments or actions motivated by personal dislike do not violate the antidiscrimination laws. <u>Gartman v. Gencorp Inc.</u>, 120 F.3d 127, 131 (8th Cir. 1997); <u>Cram v. Lamson & Sessions Co.</u>, 49 F.3d 466, 472 (8th Cir. 1995). Wollenberg provides no evidence to indicate Richardson was motivated by his gender or religion; thus, he fails to establish a case of discrimination based on a hostile work environment.

III. <u>Conclusion</u>

Based on the foregoing, defendants' motion for summary judgment is granted, and plaintiff's claim is dismissed with prejudice.

IT IS SO ORDERED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  September <u>18</u>, 2006

<u>s/ James M. Rosenbaum</u>
JAMES M. ROSENBAUM
United States Chief District Judge